## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIUS JESSO, FRANCINE JESSO, and SHEILAH NOVASKY, on behalf of themselves and all others similarly situated, the putative class being all residents of Masontown, PA,<br><br>Plaintiffs,<br><br>vs.<br><br>HATFIELDS FERRY POWER STATION, FIRSTENERGY CORP., an Ohio foreign business corporation,<br><br>Defendant. | ) ) ) ) ) Case No. ) ) ) ) ) ) ) ) ) |

## CLASS ACTION COMPLAINT

NOW COME the Plaintiffs, Julius Jesso, Francine Jesso, and Sheilah Novasky, as Putative Class Action Representatives, by their attorneys, The Law Office of James E. DePasquale, James E. DePasquale and Macuga, Liddle & Dubin, P.C., Peter W. Macuga, II, bring this Class Action Complaint In Civil Action against the Defendant, Hatfields Ferry Power Station and FirstEnergy Corp. upon cause as follows.

## THE PARTIES

1. Julius Jesso, hereinafter "Plaintiff J. Jesso", is an individual who resides at 230 W. Cross Avenue, Masontown, Fayette County, Pennsylvania 15461.

2. Francine Jesso, hereinafter "Plaintiff F. Jesso", is an individual who resides at 230 W. Cross Avenue, Masontown, Fayette County, Pennsylvania 15461.

3. Sheilah Novasky, hereinafter "Plaintiff Novasky", is an individual who resides at 410 Cottage Avenue, Masontown, Fayette County, Pennsylvania 15461.

4. Hatfields Ferry Power Station, FirstEnergy Corp., hereinafter "Defendant", is an Ohio foreign business corporation doing business in the Commonwealth of Pennsylvania, with its corporate headquarters located at 76 South Main Street, Akron, Ohio 44308, and which owns and operates, through its agents and/or employees, a coal fired electrical power station located at 2907 East Roy Furman Hwy., Masontown, Fayette County, Pennsylvania.

## JURISDICTION

5. Jurisdiction is proper in this Honorable Court pursuant to 28 USC §1332(a)(1) as the Plaintiffs are all Pennsylvania citizens and residents of Masontown, PA and the Defendant is an Ohio foreign business corporation doing business in Pennsylvania. Damages to the putative class are in excess of $75,000. Diversity jurisdiction is satisfied.

## CLASS ACTION ALLEGATIONS PURSUANT TO FRCP 23

6. The true class of Plaintiffs is so numerous that joinder of all members is impracticable.

7. There are questions of both law and fact common to the class such as nuisance, negligence and recklessness, and trespass.

8. The claims of the representative parties are typical of the claims of the class and in fact are identical as all class members claim property damage from the particulate and odors emitted by the Defendant as a result of its industrial operation.

9. The representative parties will fairly and adequately assert and protect the interests of the class as the interests of the class representatives and the unnamed class members are exactly the same and no antagonism exists between them. The class representatives have been informed of and are willing to participate in this litigation and perform the duties of class representatives. Adequate representation is also guaranteed as experienced class counsel and

experienced local counsel have undertaken representation of the class representatives and the yet to be certified class.

10. This class action provides a fair and efficient method for adjudication of the controversy because of:

    (a) The common questions of law whether the Defendant committed nuisance, negligence and recklessness, and trespass in the operation of its facility thereby causing property damages to the Plaintiffs and whether Defendant as a result of its industrial operations emitted particulates, gases and odors which caused damage to Plaintiffs' properties.

    (b) The class comprises of at least 1,004 individual home owners and all will be in immediate contact with the attorneys for the Plaintiffs by telephone, U.S. Mail, and electronic mail.

    (c) This action is manageable as a class action as the class is known and is daily affected by the particulate, gases, and odors which cause property damage to the Plaintiffs and which class is in the immediate jurisdiction of this Court. The issues are also manageable by a single Scheduling Order which would detail class discovery and merits discovery.

11. Macuga, Liddle & Dubin, P.C. will serve as lead attorney for the representative parties, and will adequately represent the interests of the class as Macuga, Liddle & Dubin, P.C. have competently served as lead counsel in class actions numerous times in the past.

12. None of the representative parties have a conflict of interest in the maintenance of the class action.

13. The representative parties by virtue of their representation by Macuga, Liddle & Dubin, P.C., which will advance all necessary costs of litigation, have adequate financial resources to assure that the interests of the class will not be harmed.

14. The common questions of law and/or fact predominate over any question involving only individual members.

15. The size of the class is conducive to class action management.

16. The prosecution of separate civil actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would confront Defendant with potentially incompatible standards of conduct, and which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

17. There is no known litigation already commenced by or against members of the class involving any of the same issues.

18. In view of the complexities of the issues and/or the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

19. It is not likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.

20. Defendant has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class.

## NATURE OF ACTION

21. Defendant operates a coal fired electrical generation facility located at 2907 East Roy Furman Hwy., in Masontown, Fayette County, Pennsylvania.

22. Defendant's operation, maintenance, control, and use of the coal fired electrical generation facility has caused to the Plaintiff Class Representatives and all others similarly situated who live or own real residential property within the one (1) mile diameter described similar property damages, the invasion by and inhalation of similar odors, the deposit of similar particulate coal dust, including fly ash, and particulates formed by gases and chemicals emitted by Defendant, and thereby caused similar damages to the personal and real property of the Class Representatives and all others similarly situated within the one and a half (1.5) mile radius of the Defendant's facility.

23. The operation by Defendant of its coal fired electrical generation facility has been the subject of numerous and constant complaints of the residents of the surrounding neighborhood, by organizations in the surrounding neighborhood area, by protests of interested persons within the surrounding area, and by government action, all of which has failed to compel Defendant to cease the improper operation of its facility and to continue Defendant's invasion and trespass of Plaintiffs' properties by air contaminants, odors, chemicals, and particulates which thereby cause damage to Plaintiffs' properties.

24. The Hatfields Ferry coal fired power station is owned and operated by Defendant, and is the only industrial facility in the Plaintiffs' area which emits into the atmosphere coal combustion byproducts, fly ash, barium compounds, copper compounds, dioxin and dioxin-like compounds, hydrochloric acid (acid aerosols), hydrogen fluoride, lead compounds, manganese

compounds, mercury compounds, sulfuric acid (acid aerosols), vanadium compounds, and zinc compounds.

25. The burning of coal by Defendant has caused and will cause fly ash and unburned coal combustion byproducts to be emitted by Defendant into the ambient atmosphere which particulate will fall and has fallen upon Plaintiffs' properties. Coal combustion particulate is described by the Plaintiffs as black dust/film on property or white powder; in the black form the particulate is unburned coal particulate or unburned coal combustion byproduct and in the white form is fly ash, which is also a coal combustion byproduct.

26. All emissions from Defendant's coal fired facility, whether gaseous, chemical, or particulate, will immediately combine with each other, or with the atmosphere, or atmospheric dust, or water particles, to form industrial particulate which will fall and has fallen onto Plaintiffs' properties thereby causing damage to Plaintiffs' properties.

27. Defendant has installed limited technology to reduce or eliminate emissions from the Hatfields Ferry Power Plant.

28. At all relevant times for this Complaint Defendant has knowingly allowed its emissions to invade, trespass, and damage Plaintiffs' properties and Defendant's Permit to Operate does not allow Defendant's operations including emissions to damage private property.

29. All unnamed Plaintiff potential Class Members are residents or homeowners who live or own real estate within one and a half (1.5) miles of the Hatfields Ferry Facility who have suffered similar damages to their property by the invasion of particulates, chemicals, and gases from Defendant's facility which thereby caused damages to their personal and real property.

**GENERAL AVERMENTS**

30. On occasions too numerous to list, Plaintiffs' property including Plaintiffs' neighborhood, residences, and yards, were physically invaded by fallout, particulate, odor, and air contaminants.

31. The fallout particulate and air contaminants which invaded Plaintiffs' property originated from the Hatfields Ferry Facility owned by Defendant (hereinafter the "facility"). At the facility, Defendant operates a coal fired electrical generation plant.

32. Defendant, as part of its normal business operations knowingly generates, utilizes, and discharges into the open atmosphere chemicals, gases, and particulates, including but not limited to, arsenic compounds, barium compounds, chromium compounds, copper compounds, dioxin and dioxin-like compounds, hydrochloric acid, hydrogen fluoride, lead compounds, manganese compounds, mercury compounds, nickel compounds, polycyclic aromatic compounds, sulfuric acid, vanadium compounds, and zinc compounds.

33. Defendant knew or should have known that some of the chemicals Defendant generates, utilizes and discharges into Plaintiffs' neighborhoods during Defendant's normal business operations, including but not limited to, arsenic compounds, chromium compounds, dioxin and dioxin-like compounds, and mercury compounds are extra hazardous and are known human carcinogens.

34. Defendant as part of its normal business operations has admitted that it has discharged into the atmosphere chemicals and particulates including, but not limited to, arsenic compounds, barium compounds, chromium compounds, copper compounds, dioxin and dioxin-like compounds, hydrochloric acid, hydrogen fluoride, lead compounds, manganese compounds,

mercury compounds, nickel compounds, polycyclic aromatic compounds, sulfuric acid, vanadium compounds and zinc compounds.

35. Defendant is within one and a half (1.5) miles of Plaintiffs and Plaintiffs' properties and Defendant's gaseous, chemical, and particulate discharges have invaded and caused substantial damage to, substantial loss of use of, and substantial interference with Plaintiffs' properties.

36. The chemicals, gaseous and coal combustion particulates, utilized by Defendant into Plaintiffs' neighborhood, and discharged by Defendant, during normal industrial operations, are harmful and noxious and have caused substantial damage to, substantial loss of use of, and substantial interference with, Plaintiffs properties.

37. The fallout types emitted by Defendant's facility, as a result of normal business operations into Plaintiffs' neighborhood, have been described by residents of the surrounding neighborhood as a very heavy black particulate or black powder, or white powder/ash/dust that requires constant cleaning and that makes Plaintiffs prisoners in their homes and has precluded them from full use and enjoyment of their properties.

38. It is Plaintiffs' information and belief that Defendant knew of the improper construction, and operation of the facility, which allows discharge of chemicals, odors, air pollutants, and particulates, or allowed the improper construction, or maintenance and operation of the facility, of the Hatfields Ferry coal fired power plant, which allows discharge of chemicals, odors, air pollutants, and particulates into Plaintiffs' neighborhood, and exercises exclusive control and or ownership over the facility.

39. Defendant knowingly continues to operate the Hatfields Ferry coal fired electrical generation plant without proper or best available technology, or any proper air pollution control

equipment, and thereby knowingly allows Plaintiffs properties within one and a half (1.5) miles of the facility to be invaded and damaged by chemicals, air pollutants, odors, and particulates emitted by the facility thereby causing damage to the Plaintiffs properties.

40. As a direct and proximate result of Defendant's negligence in constructing and or engineering and or designing and or operation and or maintenance of the facility, Plaintiffs' property has been invaded by particulates and contaminants.

41. The invasion of Plaintiffs' personal and real property by particulates, odors, and air contaminants has caused Plaintiffs to suffer property damages.

42. The invasion of Plaintiffs' property by particulates, odors, and air contaminants has caused and will cause continuous diminution in the market value of Plaintiffs' property and has interfered with Plaintiffs' use and enjoyment of their property.

43. The invasion of Plaintiffs' property by particulates, odors, and air contaminants has caused Plaintiffs to suffer property injuries including, but not limited to, exposure to horrific particulates and air contaminants. Defendant is vicariously liable for all damages suffered by Plaintiffs, caused by Defendant employees, representatives, and agents, who, during the course and scope of their employment, allowed or failed to correct the problem or problems with the Hatfields Ferry Facility which knowingly causes and knowingly allows particulates, odors, and air contaminants to physically invade Plaintiffs' personal property and real property.

44. Defendant, at its Hatfields Ferry Facility, knowingly emits as a result of Defendant's normal industrial operations sulfur dioxide into Plaintiffs' neighborhood. The sulfur dioxide emitted by Defendant into Plaintiffs' neighborhood has been defined by the U.S. EPA AERMOD and has been mapped by the U.S. EPA AERMOD. Plaintiffs' neighborhood is directly within the Hatfields Ferry sulfur dioxide air emission pattern.

## COUNT I
## NUISANCE

45. In the operation of its coal fired power plant facility, Defendant utilizes chemicals and chemical compounds to operate a coal fired electrical generation plant.

46. In the operation of its facility Defendant discharges fallout, odors, chemicals and chemical substances into the Plaintiffs' neighborhood which are invasive and have caused and continue to cause damage to Plaintiffs' personal and real property. Defendant, by the very terms of its Operating Permit, is not allowed by its industrial operation to damage private property.

47. Defendant by and through current technological processes and current engineering standards could and should preclude the discharge of any particulates or substances onto Plaintiffs' properties.

48. A condition or activity which unreasonably interferes with the use of property is a nuisance.

49. Plaintiffs did not consent for particulates and air contaminants to physically invade their personal and real property.

50. By causing particulates and air contaminants accumulated and controlled by Defendant to physically invade Plaintiffs' personal and real property, Defendant substantially and unreasonably interfered with Plaintiffs' use and enjoyment of their property.

51. Defendant's substantial and unreasonable interference with Plaintiffs' use and enjoyment of their property constitutes a nuisance for which the Defendant is liable to Plaintiffs for all damages arising from such nuisance, including compensatory and exemplary, relief.

WHEREFORE, Plaintiffs pray this Honorable Court to enter judgment in their favor and against Defendant for an amount in excess of the jurisdictional limits of $75,000 and award all other relief found due to the Plaintiffs.

## COUNT II
## NEGLIGENCE AND RECKLESSNESS

52. In constructing, maintaining, operating, controlling, engineering and or designing the facility, Defendant has a duty to exercise ordinary care and diligence so that particulates and air contaminants do not invade Plaintiffs' personal and real property.

53. Defendant knowingly breached its duty to exercise ordinary care and diligence when they improperly constructed, maintained, operated, engineered and or designed the facility and knew, or should have known, that such actions would cause Plaintiffs' personal and real property to be invaded by particulates and air contaminants.

54. As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiffs' personal and real property are physically invaded by particulates and air contaminants.

55. As a direct and proximate result of Defendant negligence in operating and or constructing and or engineering and or maintaining its facility, Plaintiffs' personal and real property are exposed to and invaded by particulates and air contaminants.

56. As a direct and proximate result of the invasion of Plaintiffs' personal and real property by particulates and air contaminants, Plaintiffs have suffered injuries.

57. As a direct and proximate result of Defendant's release of particulates and air contaminants, the Plaintiffs' have suffered mental anguish, suffering, anxiety, embarrassment, humiliation, distress, agony and other related nervous conditions and emotional sequelae.

58. The conduct of Defendant in knowingly allowing conditions to exist, which caused particulates and air contaminants to physically invade Plaintiffs' personal and real property, constitutes gross negligence as Defendant's conduct demonstrates a substantial lack of concern for whether an injury resulted to Plaintiffs, and at least constitutes recklessness.

59.    Defendant is vicariously liable for the negligence and or gross negligence of their employees, representatives, and agents, who, during the course and scope of their employment, allowed or failed to correct the problem which caused particulates and air contaminants to physically invade Plaintiffs' personal and real property.

60.    Defendant's recklessness entitles Plaintiffs to an award of punitive damages, as it was engaged in with willful disregard for Plaintiffs and constitutes outrageous conduct.

WHEREFORE, Plaintiffs pray this Honorable Court to enter judgment in their favor and against Defendant for an amount in excess of the jurisdictional limits of $75,000 and award all other relief found due to the Plaintiffs.

## COUNT III
## TRESPASS

61.    Defendant intentionally, recklessly, willfully, wantonly, maliciously and negligently failed to construct, maintain and or operate the Hatfields Ferry facility which caused the invasion and damage of Plaintiffs' personal and real property by particulates, air contaminants, and other airborne pollutants on dates too numerous to mention by air emission during Defendant's normal industrial operations.

62.    As a direct and proximate result of the foregoing conduct of Defendant, particulates, air contaminants, and airborne pollutants accumulated upon, entered upon, settled upon, physically invaded, and damaged Plaintiffs' personal and real property.

63.    It was reasonably foreseeable that Defendant's failure to properly construct, maintain and or operate the facility could result in an invasion of Plaintiffs' possessory interests by normal industrial air emissions.

64.    As a further direct and proximate result of the foregoing conduct of Defendant, Plaintiffs suffered substantial damages to their personal and real property as alleged herein.

65. The particulates, air contaminants, and airborne pollutants which entered, settled, physically invaded, and damaged Plaintiffs' land and property interfered with and damaged Plaintiffs' interests in the exclusive possession of Plaintiffs' land and property and constituted a continuous trespass upon Plaintiffs' property.

66. Plaintiffs did not consent for particulates, air contaminants, and other airborne pollutants to physically invade their land and property.

67. Defendant's actions, which resulted in the trespass upon Plaintiffs' land and property were, and continue to be, intentional, willful, and malicious and made with a conscious disregard for the rights and safety of Plaintiffs, entitling Plaintiffs to compensatory, exemplary, injunctive and punitive relief.

WHEREFORE, Plaintiffs pray this Honorable Court to enter judgment in their favor and against Defendant for an amount in excess of the jurisdictional limits of $75,000 and award all other relief found due to the Plaintiffs.

## JURY DEMAND

Plaintiffs and the putative class demand trial by jury in all matters so triable.

Dated: August 22, 2013                     Respectfully submitted:

**JAMES E. DePASQUALE (Pa. ID No. 30223)**
*/s/ James E. DePasquale*
The Law Firm of James E. DePasquale
Attorney for Plaintiffs
1302 Grant Building
310 Grant Street
Pittsburgh, PA  15219

Peter W. Macuga (MI Bar # P28114)
*Pro Hac Vice* application to be submitted
Macuga, Liddle & Dubin, P.C.
975 East Jefferson Avenue
Detroit, MI 48207-3101
(313) 392-0015